Rel: June 21, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

## SC-2023-0675

_____

## Earnest Coprich

### v.

## Bessie Elizabeth Jones

### Appeal from Montgomery Circuit Court
### (CV-21-900720)

PER CURIAM.

Earnest Coprich appeals from the Montgomery Circuit Court's March 10, 2023, order entered after a bench trial concerning whether a deed for Coprich's residence that Coprich had executed in favor of Bessie

Elizabeth Jones should be set aside on account of fraud, undue influence, or Coprich's alleged incompetence. The circuit court declined to set aside the deed. We transfer the appeal to the Court of Civil Appeals.

## I. Facts

Coprich and Jones have known each other for about 50 years. On May 21, 2019, Jones drove Coprich to attorney Dan Taliaferro's office where Coprich signed a warranty deed drafted by Taliaferro that transferred ownership of Coprich's residence, which was located on East Elizabeth Lane in Montgomery ("the Elizabeth Lane property"), to Jones. Jones testified at trial that Coprich had sold her the Elizabeth Lane property for $10,000 and that she had agreed to make monthly payments over time to complete the transaction. In contrast, Coprich testified that the sale price for the Elizabeth Lane property was $15,000, not $10,000. He also stated that Jones was supposed to pay him $500 a month and that there would be an $85 late fee for payments that were not made on time.

After Jones moved into the Elizabeth Lane property, she began making several improvements to the property because it was in "bad shape." Those improvements included clearing the yard of overgrown

bushes, fixing up the inside of the house, purchasing a septic tank, adding a front porch, and adding an additional room to the house. Coprich was aware of those improvements.

On July 6, 2021, Coprich commenced an action against Jones by filing a complaint in the circuit court in which he sought to have the court set aside the May 21, 2019, deed. In his complaint, Coprich alleged that he owned the Elizabeth Lane property; that Jones "has occupied the house located on the property … and rented a portion of the real property for use as a mobile home lot without [Coprich's] permission"; and that, when Jones was asked to remove herself and the mobile home from the property, she claimed ownership of the property based on the May 21, 2019, deed. Coprich alleged that, at the time he signed the deed, he "had a mental disability and was incompetent to execute" the deed.[1] Coprich further asserted that he "was coerced and defrauded by [Jones] into executing" the deed.

On July 28, 2021, Jones filed an answer to the complaint in which she denied Coprich's substantive allegations, asserted that she had

---

[1]The deed was notarized by Taliaferro.

3

purchased the Elizabeth Lane property in May 2019, and asserted that she had continuously occupied the property since that time.

On November 22, 2022, a bench trial was held before Circuit Judge Greg Griffin in which testimony was heard from Jones, Coprich, Taliaferro, and Coprich's sister, Cheryl Dixon. Coprich contended at trial that either he had not been competent to transfer the Elizabeth Lane property to Jones or that Jones had taken advantage of Coprich to obtain the property at a bargain price. In the course of presenting his case, Coprich introduced documentation from the Montgomery County Revenue Commissioner's Office that indicated that, for tax purposes, the Elizabeth Lane property had been valued at $30,200 in 2019.

On March 10, 2023, Judge Griffin entered a "Final Order" in which he ruled in Jones's favor. Specifically, Judge Griffin concluded that Coprich had "failed to present sufficient evidence from which this Court could find him incompetent and incapable of executing the deed at issue in this case," that Coprich's actions after the transaction and his testimony at trial indicated that Coprich was aware that the transaction was a sale of the Elizabeth Lane property, and that Coprich had "failed

4

to present clear and convincing evidence of fraud or misrepresentation on the part of [Jones] to coerce [Coprich] into signing the deed."

On April 6, 2023, Coprich filed a "Motion to Vacate" Judge Griffin's March 10, 2023, order pursuant to Rule 59(e), Ala. R. Civ. P. In an order entered on April 11, 2023, Judge Griffin summarily denied Coprich's postjudgment motion.

On May 9, 2023, Coprich appealed to the Court of Civil Appeals. However, on September 18, 2023, the Court of Civil Appeals transferred the appeal to this Court for lack of appellate jurisdiction.

## II. Analysis

Neither party raises the issue whether the proper jurisdiction for this appeal lies with the Court of Civil Appeals rather than with this Court, but "'jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.' Nunn v. Baker, 518 So. 2d 711, 712 (Ala. 1987)." Thomas v. Merritt, 167 So. 3d 283, 289 (Ala. 2013).

The Alabama Constitution provides that "[t]he supreme court shall be the highest court of the state" and that "[t]he supreme court shall have such appellate jurisdiction as may be provided by law." Art. VI, § 140(a)

and (c), Ala. Const. 2022. The Alabama Constitution further provides that "[t]he court of civil appeals … shall exercise appellate jurisdiction under such terms and conditions as shall be provided by law and by rules of the supreme court." Art. VI, § 141(b), Ala. Const. 2022. Section 12-3-10, Ala. Code 1975, provides for the exclusive appellate jurisdiction of the Court of Civil Appeals:

> "The Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000, all appeals from administrative agencies other than the Alabama Public Service Commission, all appeals in workers' compensation cases, all appeals in domestic relations cases, including annulment, divorce, adoption, and child custody cases and all extraordinary writs arising from appeals in said cases. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be deemed to be the amount involved; otherwise, the amount claimed shall be deemed to be the amount involved; except, that in actions of detinue the alternate value of the property as found by the court or jury shall be deemed to be the amount involved."

Coprich's complaint stated the following with respect to his requested relief:

> "9. [Coprich] requests the Warranty Deed … to be set aside and awarding him any damages that he may be entitled to receive.

"10. WHEREFORE, premises considered, [Coprich] requests the Warranty Deed ... be set aside, and he is granted any other relief appropriate in this matter."

Thus, Coprich clearly requested a form of equitable relief: setting aside the May 21, 2019, deed that transferred ownership of the Elizabeth Lane property from Coprich to Jones. Coprich also vaguely requested an award of damages. At the conclusion of the trial, Coprich's counsel stated that Coprich was "entitled to have the deed set aside and he regain possession of the [Elizabeth Lane] property and that any funds that [Jones] paid to him be deemed basically rent."

Last year, in McCullough v. Windyke Country Club, Inc., [Ms. SC-2023-0408, Aug. 11, 2023] __ So. 3d __ (Ala. 2023), the Court of Civil Appeals transferred an appeal to this Court in a case in which the Limestone Circuit Court had granted a party's motion to enforce a settlement agreement and had entered a judgment in the amount of $500. This Court explained that jurisdiction over that appeal belonged with the Court of Civil Appeals:

"The underlying action is a 'civil case' and there was a 'recovery' in the circuit court below of an 'amount': McCullough was awarded a judgment in the amount of $500. That recovery is thus 'deemed to be the amount involved.' Because 'the amount involved ... does not exceed $50,000,' the Court of Civil Appeals has 'exclusive appellate jurisdiction.'

7

> The fact that the circuit court in its judgment also enforced a settlement agreement, which relief prior caselaw has deemed 'injunctive in nature,' Kappa Sigma Fraternity v. Price-Williams, 40 So. 3d 683, 690 (Ala. 2009), does not alter the analysis: the judgment provided a $500 recovery, thus establishing an 'amount involved' not exceeding $50,000. Therefore, we transfer this case to the Court of Civil Appeals."

__ So. 3d at __ (emphasis added). Thus, in McCullough, we concluded that the fact that equitable relief in the form of an injunction had been requested and granted did not deprive the Court of Civil Appeals of jurisdiction over the appeal.

The present case could be viewed as being distinguishable from McCullough because Coprich neither recovered any damages nor even claimed a specific amount of damages in his complaint. But the fact that Coprich did not specify the amount of damages requested is not an impediment to concluding that "the amount involved" in this case is less than $50,000. In Kirk v. Griffin, 667 So. 2d 1378 (Ala. Civ. App. 1995), the Court of Civil Appeals explained:

> "We note that, effective January 1, 1995, which was after this appeal was filed, the jurisdictional limit of this court was raised to $50,000.[2] Prior to January 1, 1995, this court had exclusive appellate jurisdiction of all civil cases where the amount involved did not exceed $10,000. § 12-3-10, Ala. Code

---

[2]See Ala. Acts 1993, Act No. 93-346, § 5.

8

> 1975. 'Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be deemed to be the amount involved; otherwise, the amount claimed shall be deemed to be the amount involved....' Id. We note that on the notice of appeal form, Kirk specifically elected to appeal to this court and intentionally chose to indicate 'no designated amount,' rather than indicating his claim to be in excess of $10,000. While it is impossible to determine with any certainty the exact amount involved in this controversy, viewing the totality of the language employed by Kirk in his claim and appeal, it appears that the amount involved is less than $10,000, and that appellate jurisdiction in this court is proper."

Id. at 1380. See, e.g., Ex parte Greene Cnty. Comm'n, 317 So. 3d 1005, 1006-07 (Ala. Civ. App. 2020) (noting that "[t]he plaintiffs did not demand specified amounts of damages in their claims, but the nature of those claims indicate that the amount in controversy in their action exceeds the $50,000 monetary jurisdictional limit of this court"); Ex parte Texas Loss Control Sys., LLC, 164 So. 3d 602, 605 (Ala. Civ. App. 2014) (explaining that, "[w]hen no judgment has been entered, this court and the supreme court determine 'the amount involved' by reference to the claims in the complaint" but that, because the plaintiff "did not specify the amount of damages," the court examined the nature of the claims and determined that, "[u]ndoubtedly, the amount in controversy exceeds the $50,000 jurisdictional limit of this court"). Likewise, in this case, Coprich did not

9

specify in his complaint or in his notice of appeal an amount of damages sought; Coprich filed his notice of appeal with the Court of Civil Appeals; the testimony at trial indicated that the alleged sale price for the Elizabeth Lane property was either $10,000 or $15,000; and evidence admitted at trial indicated that, at the time of the alleged sale, the Elizabeth Lane property was worth, at most, $30,200. Thus, "the amount involved" in this appeal is less than $50,000.

However, we have been informed that the Court of Civil Appeals transferred the present appeal to this Court, and that our Clerk's Office accepted the appeal, based on an understanding that Coprich was solely seeking equitable relief, i.e., seeking only to set aside the May 21, 2019, deed.[3] Moreover, it is undeniable that the Court of Civil Appeals has transferred many appeals to this Court that this Court has accepted on the basis that only equitable relief had been requested in the plaintiff's

_____

[3]As we already have observed, Coprich's request for damages in his complaint was, at best, vague; in closing arguments, Coprich's counsel did not contend that Coprich was entitled to damages; Coprich's notice of appeal does not indicate that he is seeking a damages recovery; and on appeal Coprich does not mention seeking damages in any way.

complaint.[4] For example, in Wells v. Wells, 49 So. 3d 216 (Ala. Civ. App. 2010) ("Wells I"), the Etowah Circuit Court concluded that a mother who had executed a deed conveying her house to one of her sons lacked the mental capacity to do so, and the trial court therefore set the deed aside as requested by the plaintiff, who was the administrator of the mother's estate. See Wells I, 49 So. 3d at 220-21. The Court of Civil Appeals transferred the appeal to this Court "for lack of appellate jurisdiction," and this Court transferred the appeal back to the Court of Civil Appeals "pursuant to § 12-2-7(6), Ala. Code 1975," thus indicating that this Court believed that it had jurisdiction of the appeal.[5] 49 So. 3d at 221. The Court of Civil Appeals remanded the case to the trial court to "consider the remaining evidence of record to determine whether or not that evidence support[ed] a finding that the mother, at the time she executed

---

[4]In this regard, it is worth noting that, on the standard "Notice of Appeal" form, one of the listed categories for jurisdiction in the Supreme Court of Alabama is "Equitable relief, except for domestic relations." See Ala. R. App. P., Appendix 1, Form 1.

[5]Section 12-2-7(6), Ala. Code 1975, permits this Court to "transfer to the Court of Civil Appeals … any civil case appealed to the Supreme Court and within the appellate jurisdiction of the Supreme Court" as long as the case does not fall within certain exceptional types of cases provided in the statute. (Emphasis added.)

the September 2007 deed, was experiencing a lucid interval such that she was competent to execute the September 2007 deed." Id. at 224. The trial court again determined that the mother had not been competent to execute the deed, and it therefore set aside the deed. On appeal to the Court of Civil Appeals, that court once again "transferred the appeal to the supreme court for lack of appellate jurisdiction. The supreme court transferred the appeal back to [the Court of Civil Appeals] pursuant to § 12-2-7(6), Ala. Code 1975." Wells v. Wells, 69 So. 3d 192, 195 (Ala. Civ. App. 2011) ("Wells II"). Thus, in Wells II, both the Court of Civil Appeals and this Court again implicitly concluded that this Court, rather than the Court of Civil Appeals, had jurisdiction of the appeal because the plaintiff had solely sought equitable relief.

Despite this Court's past treatment of such appeals, we now conclude that in cases in which the only requested relief is equitable and "the amount involved" appears to be less than $50,000, the Court of Civil Appeals has "exclusive appellate jurisdiction." Explaining why that is so requires examining the history of the Court of Civil Appeals.

Before the inception of the Court of Civil Appeals and the Court of Criminal Appeals, Alabama had a single Court of Appeals. The Court of

12

Appeals was established by the Legislature in 1911 by General Act No.

121. Section 2 of that Act provided:

"Sec. 2. Said court, <u>except as to actions involving the title to or possession of lands</u> and except as herein otherwise provided, <u>shall have final appellate jurisdiction</u>, co-extensive with the State <u>of all suits at law where the amount involved</u>, exclusive of interests and costs <u>does not exceed the sum of one thousand dollars</u>, of all misdemeanors, including the violation of town and city ordinances, bastardy, habeas corpus and all felonies, where the punishment has been fixed at twenty years or under. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be deemed to be the amount involved, otherwise the amount claimed shall be deemed to be the amount involved, except that in actions of detinue the alternative value of the property as found by the court or jury shall be deemed to be the amount involved. …"

Ala. Gen. Acts 1911, Act No. 121, § 2 (emphasis added).

For the purpose of understanding the history of the Court of Civil

Appeals, what is worth noting in the language of § 2 of Act No. 121 is that

the Court of Appeals had no jurisdiction of appeals in "actions involving

the title to or possession of lands" and that the Court of Appeals had "final

appellate jurisdiction" as to appeals in "suits at law where the amount

involved" did not exceed $1,000.

The term "suits at law" had a specialized meaning because, at that

time, Alabama's court system had circuit courts that entertained "suits

13

at law" and chancery courts that entertained "suits at equity."[6] See, generally, <u>Barbour v. Poncelor</u>, 203 Ala. 386, 393, 83 So. 130, 137 (1919) ("In this state the distinction between the jurisdiction of the courts of law and the courts of equity has been maintained."). An action "at law" was one seeking damages for relief. See, e.g., Jenelle Mims Marsh, <u>Alabama Law of Damages</u> § 1:1 (6th ed. 2012) ("The law of damages is often, from a practical viewpoint, the very essence of most actions at law."). Actions in equity entailed some form of specific enforcement. See, e.g., Dylan Reeves, <u>Tilley's Alabama Equity</u> § 1:3 (6th ed. 2023) ("[E]quitable remedies generally seek to enjoin or compel conduct or to reform or rescind contracts, deeds, and other instruments."). See, generally, <u>Iantosca v. Benistar Admin. Servs., Inc.</u>, 843 F. Supp. 2d 148, 153 (D. Mass. 2012) ("Traditionally, legal remedies involve money damages whereas equitable remedies are 'typically coercive, and are enforceable directly on the person or thing to which they are directed.'" (quoting <u>International Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.</u>, 356 F.3d 731, 736 (7th Cir. 2004))); 1A C.J.S. <u>Actions</u> § 158 (2016) ("An action at

---

[6]"'Chancery' and 'equity' are commonly used interchangeably and synonymously." Dylan Reeves, <u>Tilley's Alabama Equity</u> § 1:1 (6th ed. 2023).

law generally involves a claim for money damages, while an equitable claim seeks a form of specific relief, as by an order directing a person to do or not to do a specific act, involving the coercive power of the court, including injunctions or specific performance." (footnotes omitted)).

In a 1915 act that became effective in 1917, the Legislature abolished chancery courts, ordered the establishment of circuit courts in every county in the State, and conferred "the jurisdiction and powers of the chancery court … on the circuit court." Ala. Gen. Acts 1915, Act No. 217, para. 2. The circuit courts were required to "try and determine every cause, or proceeding in equity in the same manner, by the same rules and principles as the same cause would be tried if in the chancery court." Id. Thus, even though chancery courts had been abolished, circuit courts maintained a "law side" and an "equity side" of the court. See § 6486, Ala. Code 1923 (providing for when a "bill in equity" should be transferred to "the law side of [the] court"). Accordingly, a procedural division between law and equity remained in the Alabama court system.

In the 1940 Alabama Code, the Legislature continued the existence of the Court of Appeals and repeated nearly verbatim the jurisdiction that that court originally possessed, i.e., that the Court of Appeals,

15

"except as to actions involving title to or possession of lands, … shall have final appellate jurisdiction of all suits at law where the amount involved, exclusive of interests and costs[,] does not exceed the sum of one thousand dollars …." Title 13, § 86, Ala. Code 1940 (emphasis added). The maintenance of that procedural division between law and equity is why the Court of Appeals declared during that period that "[t]his court of course has no chancery jurisdiction." Taylor v. Shoemaker, 34 Ala. App. 168, 171, 38 So. 2d 895, 898 (1948). The Alabama Supreme Court agreed with the Court of Appeals' understanding of its jurisdiction. See State ex rel. Patterson v. O'Dell, 270 Ala. 1, 6, 117 So. 2d 157, 162 (1959) (stating that "[t]he Court of Appeals has no appellate jurisdiction in cases involving injunctions").

However, the late 1960s brought a movement to reform the Alabama judicial system. See, generally, Tony A. Freyer & Paul M. Pruitt, Jr., Reaction and Reform: Transforming the Judiciary Under Alabama's Constitution, 1901-1975, 53 Ala. L. Rev. 77, 106-26 (2001). Part of that movement included the abolition of the Court of Appeals, which was replaced by the Court of Civil Appeals and the Court of Criminal Appeals. In 1969, the Legislature approved Act No. 987, which

16

created both of the current intermediate appellate courts, provided for the jurisdiction of each of those courts, and provided for the transfer of cases between those courts and the Alabama Supreme Court. With respect to the jurisdiction of the Court of Civil Appeals, Act No. 987 provided:

> "Section 3. The Court of Civil Appeals shall have exclusive appellate jurisdiction of all suits at law where the amount involved, exclusive of interests and costs, does not exceed ten thousand dollars, all appeals from administrative agencies other than the Alabama Public Service Commission, all appeals in workmen's compensation cases, all appeals in domestic relations cases, including annulment, divorce, adoption and child custody cases, and all extraordinary writs arising from appeals in said cases. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be deemed to be the amount involved, otherwise the amount claimed shall be deemed to be the amount involved, except that in actions of detinue the alternative value of the property as found by the court or jury shall be deemed to be the amount involved."

Ala. Acts 1969, Act No. 987, § 3 (emphasis added). Thus, when it created the Court of Civil Appeals, the Legislature increased the jurisdictional "amount involved" to $10,000, and it eliminated the exclusion of "actions involving title to or possession of lands," but the Court of Civil Appeals, like its predecessor the Court of Appeals, had jurisdiction in "suits at law," but not in appeals coming from the equity side of the circuit courts.

17

However, in 1971, the Legislature approved Act No. 1311, which empowered the Alabama Supreme Court to adopt general rules governing pleading, practice, and procedure in civil actions in all courts in Alabama. Specifically, Act No. 1311 provided:

> "**Section 1**. <u>For the purpose of simplifying practice and procedure in all civil actions in all Courts in Alabama, and securing the just, speedy and inexpensive determination of every action upon its merits</u>, the Supreme Court shall have the power from time to time to adopt by general rules the forms of process, writs, pleadings, motions, practice and procedure in all civil actions in all Courts in Alabama; **provided, however**, that such rules shall not abridge, enlarge or modify the substantive right of any party.
>
> "**Section 2**. In adopting the said general rules, <u>the Supreme Court shall have the power to provide for one form of civil action and procedure for the trial of cases both at law and in equity</u>; **provided, however**, that equitable rights as at common law and declared by the Supreme Court of Alabama shall be preserved to the parties inviolate; **provided, further**, that the right of trial by jury as at common law and declared by the Seventh Amendment to the Constitution of the United States and by Section 11 of the Constitution of Alabama shall be preserved to the parties inviolate."

Ala. Acts 1971, Act No. 1311, §§ 1-2 (bold typeface in original; other emphasis added).[7]

---

[7]In December 1973, Amendment 328 to the Alabama Constitution of 1901 was approved. The "new judicial article," as it was called, "'place[d] the mandatory function on the Supreme Court to make the

Pursuant to Act No. 1311, in July 1973 the Alabama Supreme Court adopted the Alabama Rules of Civil Procedure. Pertinent here is Rule 2, Ala. R. Civ. P., which states: "There shall be one form of action to be known as [a] 'civil action.'" The Committee Comments on 1973 Adoption of Rule 2 explained:

> "This rule does not affect the various remedies which have heretofore been available. Instead, the merger of law and equity and the abolition of the forms of action supply one uniform procedure by which a litigant may present his claim in an orderly manner to a court empowered to give him whatever relief is appropriate and just; it is for the court to decide, in accordance with unchanged principles of substantive law, what form of relief meets this test on the particular facts proved."

See, e.g., Ex parte Reynolds, 436 So. 2d 873, 874-75 (Ala. 1983) ("Rule 2, [Ala. R. Civ. P.], provided for the merger of law and equity. … That merger was accomplished so that litigants could present related legal and equitable claims in an orderly manner."); Du Boise v. Brewer, 349 So. 2d 1086, 1087 (Ala. 1977) ("[I]t should be remembered that the procedural

---

operating rules for the judicial system, subject to only specific restraints and checks.'" Schoenvogel v. Venator Grp. Retail, Inc., 895 So. 2d 225, 231 (Ala. 2004) (quoting Morgan Cnty. Comm'n v. Powell, 292 Ala. 300, 326, 293 So. 2d 830, 854 (1974) (Heflin, C.J., dissenting)). See Art. VI, § 150, Ala. Const. 2022 ("The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts ….").

differences between law and equity have been abolished and there is only one form of action, known as a 'civil action,' in which all claims between the parties should be litigated."); <u>Citizens Bank & Sav. Co. v. Wolfe Sales Co.</u>, 394 So. 2d 941, 943 (Ala. 1981) (plurality opinion) ("The Alabama Rules of Civil Procedure abolishing common law forms of action and replacing them with one form of action did not abolish substantive remedies …."). In other words, with the adoption of Rule 2, Ala. R. Civ. P., the procedural distinctions between law and equity were abolished, but the substantive legal differences between those remedies were preserved. As Act No. 1311 and the Committee Comments to Rule 2 indicated, the merger of law and equity occurred in order to simplify legal procedure and to increase the likelihood that civil disputes would be decided on the merits rather than upon legal technicalities.[8]

---

[8]The Alabama Rules of Appellate Procedure, which the Legislature empowered the Alabama Supreme Court to promulgate in September 1971, were adopted in June 1973 and became effective on December 1, 1975. Those rules similarly declared that they "shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Rule 1, Ala. R. App. P. See Ala. Acts 1971, Act No. 964, § 1. See, generally, J.H. Alsbrooks & J.H. Ritch, <u>The Alabama Appellate Process -- Part II</u>, 6 Cumb. L. Rev. 63, 63-64 (1975).

In apparent recognition of the adoption of the Alabama Rules of Civil Procedure and the procedural changes brought about by the merger of law and equity, on September 16, 1975, Chief Justice of the Alabama Supreme Court Howell Heflin and Presiding Judge of the Alabama Court of Civil Appeals L. Charles Wright entered into an agreement on behalf of those courts that was ordered entered into the minutes of the Alabama Supreme Court and that sought "to clarify jurisdictional questions between the two courts." In part, that agreement stated: "(3) Appeals which contain both legal and equitable relief and the amount in controversy does not exceed $10,000 shall come within the jurisdiction of the Court of Civil Appeals."[9]

During this same period of reform, the Legislature ordered the revision, digesting, and codification of all the statutes of the State of Alabama into The Code of Alabama 1975 ("the Code"). See Ala. Acts 1977, Act No. 20, § 1. That process included the Legislature's authorizing a joint committee of the members of the House of Representatives and the

---

[9]The September 16, 1975, agreement's understanding with respect to which appellate court has jurisdiction of appeals that involve both legal and equitable relief is confirmed by our decision in McCullough.

21

Senate to make revisions, corrections, and amendments to the Code before its final adoption. See Ala. Acts 1976, Act No. 510. One of the "substantive and major changes" made by the joint committee was to § 12-3-10, in which "'civil cases' [was] substituted for 'suits at law.'" Code of Alabama 1975 Legislative Manuscript, Appendix I. Summary of Changes in Codified Sections, p. A.148. On February 15, 1977, the Legislature approved the adoption of the Code. See Ala. Acts 1977, Act No. 20. "The 1975 Code became effective on October 31, 1977, pursuant to a proclamation of the Governor of October 1, 1977, based on Act No. 20 (1977 Regular Session)." Ex parte Stewart, 730 So. 2d 1246, 1249 (Ala. 1999).

The reason for that "major change[]" in language from "all suits at law" to "all civil cases" is clear from our foregoing discussion concerning the adoption of Rule 2 of the Alabama Rules of Civil Procedure: the change in language reflected the fact that law and equity had been merged with respect to legal procedure in order to simplify the litigation process for the parties involved. The significance of the change in language from "all suits at law" to "all civil cases" is equally clear from our foregoing discussion concerning the legal distinctions between "suits

22

at law" and "suits in equity": "all civil cases" encompasses both types of cases. Indeed, the significance of describing a case as a "civil action" rather than as either a "suit at law" or as a "suit in equity" was recognized long ago by this Court:

> "The jurisdiction in the present Constitution is 'in all civil causes.' So it was under the former constitutions. <u>The term comprehends every cause which is not criminal. All causes, whether in equity or at law, had but two grand classifications, civil and criminal</u>. The latter comprehends only violations of the criminal law, -- causes at the common law, in which the crown, or with us the State, complains of violated law and broken peace, in which all individual right and interest are lost, and merged in the greater right and interest of the sovereign. <u>Civil causes had parties, individual suitors, whose rights and wrongs were the matter of controversy. They embraced every action at law and every suit in equity</u>, whether it sprung from contract or from tort; whether the form of action for the injury was ex contractu or ex delicto."

<u>Taylor v. Woods</u>, 52 Ala. 474, 478-79 (1875) (emphasis added). In short, with the adoption of the Code, the jurisdiction of the Court of Civil Appeals was altered in § 12-3-10 to include "all civil cases" -- both in law and in equity -- that had an "amount involved" of up to $10,000.[10]

---

[10]In 1993, the Legislature promulgated another significant change to § 12-3-10 when it raised the jurisdictional "amount involved" for appeal of a civil action to the Court of Civil Appeals from $10,000 to $50,000 -- a change that became effective on January 1, 1995. See Ala. Acts 1993, Act No. 93-346, § 5.

23

Nonetheless, despite the procedural merger of law and equity brought about by Rule 2 of the Alabama Rules of Civil Procedure in 1973, the Alabama courts' first attempt to recognize the effect of that merger through the September 16, 1975, agreement between the Supreme Court and the Court of Civil Appeals, and the substantive change in the language of § 12-3-10 that was adopted in 1977, some appeals that were filed in the Court of Civil Appeals that involved both legal and equitable relief continued to be transferred to, and were accepted by, the Alabama Supreme Court. Moreover, essentially all appeals filed in the Court of Civil Appeals that involved solely equitable relief -- and that did not fall within the Court of Civil Appeals' specialized jurisdiction for appeals from administrative agencies or in cases involving workers' compensation or domestic relations -- continued to be transferred to, and were accepted by, the Alabama Supreme Court.[11]

---

[11]Even practitioners who are considered experts in civil procedure have not fully recognized the shift in the jurisdiction of the Court of Civil Appeals brought about by the alteration of the language in § 12-3-10. See Champ Lyons, Jr., Appellate Practice Pointers for Alabama Lawyers in Civil Cases, 44 Alabama Lawyer 6, 6 (1983) (stating that "the Supreme Court hears all appeals in claims solely for equitable relief, regardless of the amount in controversy. Where legal and equitable claims are mixed in the same action, the equitable claims are disregarded for purposes of determining jurisdiction.").

The present case is a testament to the enduring confusion concerning the jurisdiction of appeals that seek equitable relief, which we seek to clarify through this opinion. Coprich filed his appeal with the Court of Civil Appeals, but the appeal was transferred to, and accepted by, this Court because Coprich had sought equitable relief in his complaint: Coprich asked the circuit court to set aside the May 21, 2019, deed that he had signed and that had granted ownership of the Elizabeth Lane property to Jones. Coprich's action is clearly a "civil case" within the meaning of § 12-3-10. Moreover, the "amount involved" in the case clearly does not exceed the jurisdictional threshold of $50,000 provided in § 12-3-10. Therefore, we transfer the appeal to the Court of Civil Appeals.

APPEAL TRANSFERRED.

Parker, C.J., and Shaw, Wise, Bryan, Sellers, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.